Clerk, please call the next case. I believe, is counsel, I think counsel is here for the... Epgar? Epgar, yes. Okay, very good. Calls the counsel. 213-247, Keith Epgar v. Penfold, Inc. May it please the court, counsel. Jennifer Kieserwetter on behalf of the petitioner, Keith Epgar. There really is one, oh, sorry, there really is one simple issue in this case. So I won't get into a significant amount of facts up until the point where my client was terminated. And what the evidence in this case consists of is an FCE, an IME report of a Dr. Gordon, surveillance videos of my client, and then at hearing was presented the testimony of Edward Pagela, a vocational expert, as well as the live testimony of the Caterpillar doctor, Dr. New, and Ken Kruska, who is a Caterpillar employee. Now the issue here is posed differently by petitioner and respondent, or the employer and the employee here, as to what standard of review we have. It is my belief that the question here is whether or not interstate scaffolding would apply. In this situation, there's no doubt that my client was terminated. Whether or not he was terminated for cause... Let me ask you a question. Under interstate scaffolding, you still have to prove entitlement to TTD, right? To TTD, yes. I know interstate scaffolding is talking about TTD. In your brief, you kind of argue about interstate scaffolding being extended to vocational rehabilitation. But my point is, under interstate scaffolding, you still have to show that he wasn't working and was unable to work. So even if this was extended, you'd have to prove your client was entitled to voc rehab, right? That is correct. That is correct. And as far as the extension, I don't believe this court has ruled on that yet. I know lower levels have, but there was nothing that I could cite to this court. Well, my point is, if you didn't prove that your client was entitled to voc rehab, you wouldn't need to even discuss extending the benefit scaffolding. Well, because of the ruling in interstate scaffolding is why I'm arguing he's entitled to voc rehab. Because there is no evidence here. And what the employer says in their brief is there's no evidence that he could not return to work as a welder, which is why I think they believe this could be a manifest weight issue. I don't think the commission is clear on that, but this is what I will tell you. There is no evidence that he could return to work as a welder. Well, whose burden of proof? Yours. Right. But all of the evidence in this case proves that he could not return to work as a welder. Okay, just a minute. He took an FCE in February of 2010. He did an FCE. That FCE demonstrated that he had functional capabilities in the modified medium to heavy physical demand level. And Mr. Daly, I think, or Donley, indicated in his report that that met or exceeded the demand level for a welder. So there is evidence that he could return to work as a welder. That is correct, but we cannot ignore the evidence presented by Caterpillar. But nobody is saying that. Here's the problem I'm having with your argument of de novo review. The time during which the claimant is temporarily or totally disabled is a question of fact for the commission, generally speaking, correct? Correct. Now, as Justice Stewart just cited, it's not de novo because you've got evidence conflicting on this issue. So how could it possibly be de novo? You're saying that the facts are only susceptible to one inference? He just gave you three inferences on the other side. It can't be de novo review. So if his manifest weight and you were required to prove that he was not capable of returning to work as a welder in order to be entitled to voc rehab, and there's evidence in the record that he could return to work as a welder, how can you say that their denial of CTD is against the manifest weight of the evidence? Because I don't think there is evidence in the record that he could return to his usual and customary work as a welder. And here's why. He had an FCE. However, Caterpillar's doctor, Dr. New, testified at hearing, despite the surveillance videos and the FCE, I still would have put restrictions on him. Ken Kruska testified we would have had multiple light-duty jobs for him had we not terminated him. And that's all true. So the only thing we have in the record is evidence that Caterpillar never would have returned him to work as a welder. He could not have returned to work as a welder. Yes, we have an FCE. I think in deference to the cases, he could not return to work as a welder relates to his physical capabilities, not whether Caterpillar would have hired him. So the question becomes, we know he was terminated. The question becomes, is there evidence in the record to support the notion that this man could return to work as a welder? If the answer to that question is yes, then the commission could justifiably deny him TTD if they believed it. Now, there's certainly evidence in the record that he could not return to his regular employment. If they had believed that, then they would have awarded him the TTD, even though he was terminated. But it boils down to a manifest weight question. It's not an oval question. And I guess my argument would be, even if it is a manifest weight question, what evidence is there that he could return to work as a welder? Caterpillar's own doctor testified, the FCE. But Caterpillar, no one released him based upon the FCE, first of all. No doctor released him based upon the FCE. Caterpillar's own IME, let's talk about the doctors that reviewed the FCE. Dr. Gordon, their own IME, what did he say? He would have given him stricter restrictions on the FCE. And he even saw the surveillance videos. Dr. Gordon's report indicates that he would not have returned him to work to his usual and customary employment. We have Caterpillar's doctor, Dr. New. He saw the FCE. He saw the surveillance videos. And he testified that he would have still given him restrictions. He testified that he should be able to claim he should be able to return to work as a welder. Did he not testify to that? I think, didn't Dr. Daley issue a report that he should be able to return to work as a welder within six months after his surgery? That was before the surgery. He never, after the FCE, he deferred him to pain management. Daley wrote a report that said that six months after the surgery, the plan is for him to be able to return to work as a welder. And then about six months after the surgery, the FCE occurred. And the FCE classified him in a demand level, which would have allowed him to return to work as a welder. I mean, that's all in the record, right? That's correct. Daley never after that returned him to work. And as I said, Caterpillar's doctor reviewed everything and said, I still would have given him restrictions. I mean, there's nothing in the record indicating that Caterpillar would have returned him to work. In fact, everything is to the contrary. It's not whether Caterpillar would or would not have returned him to work. It's whether he was capable of returning to work. What did Dr. Nee say? Nee, N-E-E-U. What did he say about all this? After he saw the surveillance video. He testified that he still would have placed restrictions on him. They would have just been different. He said that if the claimant had accurately described his abilities as demonstrated in the video, he would have been able to return him to work at an earlier date. He testified that the claimant's medical condition had stabilized by March 8, 2010. He wasn't discharged until July 6, 2010. That is correct. But he also testified that he would have still placed restrictions on him. So there's no evidence here that any medical doctor has indicated that he could return to work within the limits of the FCE. No doctor has indicated that. Any doctor who has reviewed the FCE, even those that also reviewed the surveillance videos, has still said that he would have restrictions. And so the argument that I have is there is no evidence to support a finding that he could return to his usual and customary employment with cannabis. There's evidence. There's no doctor's opinion. And the FCE would indicate he could. So you're saying there is no doctor's opinion. Well, yeah. I mean, there's an FCE, but there's no doctor releasing him based upon the FCE. There is no doctor saying, I am going to take this FCE and those are his restrictions. Daily referred about to pain management. There is no doctor indicating. They're indicating to the contrary. Anybody who reviewed the FCE, including Kat's own doctor, said he would still have restrictions. And that is what I'm saying is there's no evidence that any doctor believes that he could return to work as a molder. And based upon that, the standard of review is manifest way to the evidence. Where is the evidence here that he could return to his usual and customary employment? No one adopts the FCE restrictions. It's Caterpillar's IME and Caterpillar's doctors that I'm relying on here, indicating regardless of the termination, he could not return. And therefore, I would ask the court to indicate that he would be entitled to vocational rehabilitation because under the principles of interstate scaffolding, even though we are not talking about TTD here, under the principles of that case, I'm asking you to extend it, under the principles of that case, that he would still be entitled to any benefits under the act, regardless of his cost. Your vocational expert was Figueroa, right? Correct. Did he ever look at the surveillance video? He did not. And the commission pointed that out. However, was he even aware of the FCE report of February 2010? The commission suggested he ignored it. Never looked at the surveillance video and totally ignored the FCE report. They found it not credible. Well, they pointed that out. Now, the surveillance video, and as we know, there's no discovery, so I didn't necessarily have the surveillance video to give to Mr. Pagella. As far as the FCE, he was aware of the FCE. He discussed Dr. Gordon's opinions in his testimony, so he was aware of it. They did throw his opinion out. They didn't adopt his opinion, but I don't think it matters. It really comes down to can he return to his usual and customary line of employment. Well, who says he can't? Other than Pagella. And they found him not credible. The IME of Caterpillar, Dr. Gordon, says he can't? Caterpillar's own doctor says he can't? He said he would put some restrictions on him, but the question is, would those restrictions have prevented him from performing his customary occupation as a welder? Because that's what he has to approve. Not whether Caterpillar would rehire him. That's not what's required. What's required is he cannot return to his customary occupation. His customary occupation is not an employee at Caterpillar. It's a welder. So the question becomes, where is your, where is the evidence in the record that suggests even if these restrictions were placed on him, that he could not return to work as a welder? I believe Dr. Gordon's were light-duty restrictions. I'd have to pull him up to cite him, but he put light restrictions on him. Dr. Gordon, Caterpillar's IME, he reviewed the FCE, he reviewed the surveillance videos, and he indicated that he would still have light restrictions. So now the question becomes, does the commission have the right to adopt the conclusion in the FCE report when there is contrary evidence in the record from a physician? And I think the question becomes, the issue is, what medical doctor is adopting the FCE report? Ah, interesting question. Does a medical doctor have to? Where does it say that? Where does the case law say that? What's the best case that you have that says that for an FCE to be valid evidence to support a denial of vocational rehab, that the FCE has to have been adopted by a medical doctor? I don't know that there is one, but there needs to be medical support for the decision of the commission. And if all the doctors that you have are not adopting the FCE... What case says that, that there has to be medical support? You've heard of the chain of events of it, right? Well... I mean, we're required to operate under the legal fiction that the commission has this vast experience in dealing with medical conditions and all sorts of things, and that we can't second guess them because they have this vast experience. So now the question becomes, why do they have to have a doctor? And where does it say that? I guess the concern that I have here is every doctor you have gives you the opposite conclusion, which is why if this is manifest weight... Did any of the doctors say he could not return to work as a welder? Well, his pain management doctor still had him off. I think some of that was thrown out because of the issue over the cane. I mean, there was a dispute as to... Which may cloud the issue because there was a dispute as to... Did any doctor render an opinion in the case that he could not return to work as a welder? Yes, Dr. Gordon. Dr. New testified he wouldn't return him to work as a welder. Dr. New testified he would have put restrictions on him. They didn't. They said they put restrictions on him. Did any of them say he cannot return to work as a welder? Dr. Gordon, their IME. Their IME? Yes. He said that as of that date... Yes, he put him on light restrictions. You have to parse out the light restrictions. Some of us know about welding. If I've got it in mind, there's lots of jobs that are a lot more tasking than welding. Sometimes they're even considered light-duty jobs, depending on the welding station and the circumstances. So the question is, not that he's on light restrictions, but do those light restrictions prohibit him from doing the task of being a MIG welder on the line? Is there any... Now, I think that's the question. Am I correct, Justice? That's the question. Not whether they put out restrictions. Did any doctor say, in my opinion, he cannot return to his usual and customary occupation as a welder? With or without restrictions. Nobody said that, did they? I don't think anyone said that. I think they just placed restrictions on him. Okay, well, that's a different issue. Edward Pagela says that. I know his testimony was thrown out. I don't know that it was thrown out on that issue, though. I mean, he testified that the welding job that he had would have been medium to heavy duty. So I don't know that the Commission did not adopt that part of his decision. I mean, they weren't adopting his overall conclusion because they threw out the fact that he didn't see the surveillance video. Didn't Pagela even actually testify that he could return to work as a spot welder? Yes, but that was different than the welding that he was doing. And does the record tell us what that difference is? Just Pagela's testimony. Your best argument is the decision is against the manifest way of the evidence. You want to stay away from saying no doctor ever testified that he could return as a welder, therefore, there's no medical opinions to support it. It may not be necessary under the law. But I think we understand your argument about manifest way. And your time is up. Thank you. Counsel, you may respond. Good morning, Your Honor, counsel. Liz LeBaron on behalf of the respondent, Caterpillar. The circuit court was correct. They treated this as a manifest way to the evidence case. Judge Aikman said that the commission decision rested on credibility determinations. He applied the manifest way standard and found that the commission decision was supported by the manifest way of the evidence. I think counsel's argument fails because she equates restrictions with ability to perform the full duties of his work. Like you, counsel, I know that I have between five and ten different welding positions at Caterpillar. Some of them are very light duty. Some of them are even sit stand. Do they all pay the same amount of money? No. Actually, yes. They do? Well, there's class three welders and class four welders, and then you can have a retention bonus, too. So, yes, they pay quite a bit up to 27. Because we have cases that suggest that an operating room nurse who, because of her injury, could not return to work as an operating room nurse, but could be a nurse in the doctor's office at a different pay level. And we indicated she was entitled to a wage differential for that. Even though she was, her occupation was nurse, her usual occupation was operating room nurse. Now, this man's usual occupation was MIG welder. Correct. Okay. Is there evidence in the record that suggests that he could return to work as a MIG welder? Yes. Because the restrictions that would have been written, which Dr. New said he would have written, restrictions consistent with the February FCE after viewing the surveillance, the only restrictions were against squatting, kneeling, and crawling. And our MIG welding does not require the welders to crawl, squat, or kneel. So he could have returned to his full customary job. So we're back to the question that we asked your opponent. Although there may have been restrictions, is there any evidence in the record that he could not perform the job of a MIG welder even with those restrictions? No, I don't believe there is any evidence. The only evidence that was presented as to whether or not he could return to his full performance of his job was from petitioner's expert Ed Pagella. The commission weighed his credibility and determined that because he had not seen the FCE from February, only relied on Dr. Gordon, had not seen the surveillance DVDs, and had not, did not know his full employment history, that he had been terminated for dishonesty, they did not find Pagella persuasive. Actually, they found him lacking credibility. Correct. And they also questioned petitioner's credibility. This is a petitioner who did not cooperate with the return-to-work process. He had been accommodated for two and a half years, even prior to his knee replacement surgeries. Respondent tried to begin the return-to-work process in December, which is very consistent with what Dr. Daly had proposed, that six months after the last surgery, he would return to work. Six months after that surgery, he had the FCE that said that he met or exceeded the abilities of a welder. I think this is a failure of proof case. I think the commission decision is supported by the manifest weight of the evidence, and I think the circuit court got it right, and I would ask you to confirm. And if you have no further questions, I'll let you have some free time. Thank you. Counsel, you may reply. There's nothing in the record indicating where Dr. New ever testified that he would have released him based upon the FCE restrictions. Counsel indicated that, but that's not what he testified to. He testified that if your client had not lied to him when he treated him, based on what he saw in the surveillance video, he would have returned him to work at an earlier date and that he found, in his opinion, the medical condition had stabilized as of March the 8th. The commission cut your client off on March the 7th. Now, that's what New testified to. He said your client lied to him. That is correct, but he also testified that he still would have placed restrictions on him. And is there any testimony that those restrictions would have prevented him from working as a MIG welder? He testified that he still would have restricted him. That doesn't make any difference. Could he work as a MIG welder? That's the issue. Well, we have that testimony from him, and then Ken Kriska from Caterpillar testifying they would have had multiple modified duty jobs available for him. You know, that's the only testimony I have from Caterpillar, is that they would have put restrictions on him and had modified duty jobs available. If they intended to return him to work as a MIG welder, why wouldn't that have been testified to? They testified to modified duty jobs. They never offered him a job as a MIG welder. They never came out and said, you know, now that I saw these videos, why don't you come back because I think you can be a MIG welder. Because they fired him. They fired him on July the 6th because they saw the video. That's why they fired him. They didn't offer him a job because he was fired for dishonesty. We don't know what they would have done if they hadn't fired him. We do know what they would have done because Dr. New testified they still would have given him restrictions, and Ken Kriska testified they would have had several modified duty jobs available for him. Is that an issue in this case? The issue in this case was, was he entitled to vocational rehabilitation? And that rests on the question of, is there evidence in the record that he could not perform his usual and customary occupation? There is no requirement. No case says there has to be evidence in the record he would have been rehired by the employer. You're entitled to vocational rehabilitation. Let's say the employer went out of business. He may still be entitled to vocational rehabilitation if he could not return to his usual occupation. It's could he return to the occupation, not as an employee of Caterpillar. I'm looking for the evidence that says he couldn't. And I think that's in all of the medical doctors here, Dr. Gordon, Dr. New. What you're saying is the commission could have found, based on the totality of the medical evidence, that he was unable to return, but they didn't. Instead, they looked at the FCE and other evidence, and there is evidence in the record that he could return to work. I guess what I'm saying is I think it's against the manifest weight of the evidence to adopt an FCE that every doctor rejected. There's no doctor here that adopted the FCE. No doctor rejected the FCE. There's no place in the record where they said, we don't agree with this FCE. But they all said, based upon the FCE, I would have still given him restrictions beyond the FCE. And that is why I think it's against the manifest weight of the evidence. Thank you. Okay. Thank you, counsel, for all of your arguments in this matter this morning. We'll be taking under advisement a written disposition shall issue. We will take a brief recess.